IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

BRENDAN WELCH, and WELCH RACING,

Plaintiffs,

vs.

DAVID WRIGHT, et. al.,

Defendants.

**4:23CV3128**

**MEMORANDUM AND ORDER**

Before the Court is a motion filed by Plaintiffs Brendan Welch ("Welch") and Welch Racing ("WR") (collectively "Plaintiffs") objecting to this Court's April 6, 2026, Order[1] striking filing numbers 67, 68, and 69, which this Court construes as a motion for reconsideration of the April 6 Order (the "Motion for Reconsideration"), Filing No. 71. The matter is also before the Court to perform an initial review pursuant to 28 U.S.C. § 1915(e)(2) of Plaintiff's amended complaint, Filing No. 42, and supplement, Filing No. 65 (collectively the "Amended Complaint"), to determine whether summary dismissal is appropriate.

For the reasons set forth below, the Motion for Reconsideration, Filing No. 71, shall be denied. Further, upon completion of this initial review, the Court shall dismiss the Amended Complaint due to multiple pleading and jurisdictional issues discussed further herein.

## I. THE MOTION FOR RECONSIDERATION

In his Motion for Reconsideration, Plaintiff asks this Court to reconsider its April 6, 2026, Memorandum and Order, Filing No. 70, striking three documents Plaintiff filed on

[1] *See* Filing No. 70.

April 2, 2026, *see* Filing Nos. 67, 68, and 69, pursuant to this Court's March 17, 2026, Memorandum and Order barring Plaintiffs from filing any further supplements or amendments to their Amended Complaint without leave of Court (the "March 17 Order"), *see* Filing No. 66. Plaintiffs spend a multitude of pages explaining why the three documents filed are not violative of the March 17 Order. *See, e.g.*, Filing No. 71 at 1-2 (arguing their submissions do not violate the March 17 Order because the documents filed are not supplements to the Amended Complaint and instead are "briefs" and "revisions" which are "no different than [their] previously filed Memorandums" which were allowed by this Court). However, Plaintiffs' attempts to construe the documents as briefs as opposed to supplements does not change their intended purpose—to add to or otherwise supplement the arguments and facts set forth in the Amended Complaint. Pursuant to the March 17 Order, the three filings were properly stricken.

Moreover, Plaintiffs apparently fail to understand that Filing Nos. 67, 68, and 69, were filed *after* this Court clearly informed Plaintiffs in the March 17 Order that no further filings would be accepted to support their Amended Complaint until after this Court completed its initial review. The fact that the Court accepted similar filings previous to the issuance of its March 17 Order is irrelevant.

Ultimately, while this Court could continue to further waste resources addressing every argument presented by Plaintiffs in support of their position, this Court declines to do so. This matter has been pending for over three years, and until now, this Court has been unable to dismiss or otherwise progress the case, largely because Plaintiffs have failed to comply with or have otherwise wholly ignored the orders of this Court on multiple occasions and have filed incomplete and/or untimely filings in other instances. *See, e.g.*,

Filing No. 23 at 3 (explaining that the Court has not been able to perform the review required under 28 U.S.C. § 1915(e) to allow any potentially viable claims to proceed due to Plaintiffs' continued failure to comply with orders); Filing No. 30 at 7 (discussing Plaintiffs' multiple and ongoing compliance failures). Plaintiffs' filing of the three documents at issue in their Motion for Reconsideration is simply more of the same behavior.

As clearly stated in the March 17 Order, Plaintiffs were expressly informed this Court would not consider any further filings supporting the Amended Complaint without Plaintiffs obtaining leave to file them. As Plaintiff did not seek leave to file Filings No. 67, 68, and 69, which are intended to further supplement the Amended Complaint, and as Plaintiffs do not explain why leave was not sought, the Motion for Reconsideration shall be denied and the documents at Filings No. 67, 68, and 69 shall remain stricken.

## II. THE INITIAL REVIEW

### A. Summary of the Amended Complaint

In their Amended Complaint, Plaintiffs name over 150 private individuals and multiple entities as defendants. *See* Filing No. 42; Filing No. 65. It appears all of Plaintiffs' claims stem from social media posts made by defendants regarding Welch and/or WR from September 6, 2021, through August 30, 2024. Filing No. 42 at 45.

Specifically, Plaintiffs assert the following state law claims against various defendants: invasion of privacy,[2] tortious business interference, intentional infliction of

[2] Plaintiffs' claims for unauthorized use of name, image, or likeness fall under Neb. Rev. Stat. § 20-203, addressing invasion of privacy. *See, e.g.*, *Wilkinson v. Methodist, Richard Young Hosp.*, 612 N.W.2d 213 (Neb. 2000). .

emotional distress,[3] and defamation of character[4] relating to comments posted by various defendants on social media referencing or discussing Plaintiffs. Filing No. 42 at 5, 45-84. They assert federal claims of trademark and copyright infringement against multiple defendants relating to the unauthorized reposting and/or use of photos, logos, and names Plaintiffs assert belong to them. *Id.* at 86.

As relief, Plaintiffs seek both monetary damages and injunctive relief. *Id.* at 4-5.

**B. Legal Standard**

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

---

[3] While Plaintiffs also assert tort claims of online impersonation, stalking, harassment, cyberbullying, cyberstalking, these claims are considered here under intentional infliction of emotional distress and defamation as there are no separate private rights of action for these claims under federal or Nebraska law. *See*, *e.g.*, *Roth v. Wiese*, 271 Neb. 750 (2006) (addressing online stalking and harassment under an intentional infliction of emotional distress framework). Cyberstalking is a federal crime but not a cause of action in tort. *See United States v. Gross*, 23 F.4th 1048, 1053 (8th Cir. 2022) (describing 18 U.S.C. § 2261A(2) as a federal criminal statute prohibiting stalking via interstate communications, as "cyberstalking").

Plaintiffs also assert claims of "forced business interruption via reputational risk," "disgorgement and seizure of illegal profits," and "misappropriation." Filing No.42 at 5. Disgorgement is a remedy not a claim. *See Rambo v. Sullivan R.E. Grp., L.L.C.*, No. A-05-1020, 2007 WL 2122172, at *3 (Neb. Ct. App. July 24, 2007) (discussing disgorgement of profits as a potential remedy for claims of unjust enrichment and fraudulent misrepresentation under Nebraska law). There is also no claim under Nebraska or federal law for "forced business interruption via reputational risk." While it appears Plaintiff's "misappropriation" claim may relate to his claims for the unauthorized use of his "intellectual property" which falls under his copyright and/or trademark claims, *see, e.g.,* Filing No. 42 at 11, because Plaintiffs do not elaborate further on what they mean by misappropriation, it is impossible for this Court to determine if an additional claim is potentially actionable as there is also no specific tort of "misappropriation" under federal or Nebraska law. For these reasons these specific claims shall not be considered further.

[4] Plaintiffs' claims for "libel" and "slander" are recognized as a form of defamation under Nebraska law. *See* Neb. Rev. Stat. Ann. § 25-839. Libel is defamation where the defamatory words are written or printed, while slander is defamation where the defamatory words are spoken. *Palmtag v. Republican Party of Neb.*, 999 N.W.2d 573, 585 (Neb. 2024) (citing 50 Am. Jur. 2d Libel and Slander § 6 (2017)).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). While "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties," *id.* at 849 (internal quotation marks and citations omitted), pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or their complaint shall be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

**C. Discussion**

Before a federal court can address the merits of any matter, it must first determine whether it has jurisdiction over the case as jurisdiction is a "'threshold requirement in every federal case.'" *Barclay Square Properties v. Midwest Fed. Sav. & Loan Ass'n of Minneapolis*, 893 F.2d 968, 969 (8th Cir. 1990) (quoting *Sanders v. Clemco Indus.,* 823 F.2d 214, 216 (8th Cir.1987)). This is because federal courts are courts of limited jurisdiction, *see Filla v. Norfolk Southern Railway Co.*, 336 F.3d 806, 809 (8th Cir. 2003); *Alumax Mill Products, Inc. v. Congress Financial Corp.*, 912 F.2d 996, 1002 (8th Cir. 1990), meaning they may adjudicate *only* those cases that the Constitution and Congress authorize them to, which generally are those in which: 1) the United States is a party; 2)

a federal question is involved; or 3) diversity of citizenship exists, *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

As "[s]ubject-matter jurisdiction can *never* be waived or forfeited," *see In re Otter Tail Power Co.*, 116 F.3d 1207, 1213 (8th Cir. 1997) (emphasis added) (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012)), and as the Eighth Circuit has admonished district courts to "be attentive to a satisfaction of jurisdictional requirements in all cases," *Sanders*, 823 F.2d at 216, this Court must first establish jurisdiction to preside over the dispute before considering the merits of Plaintiffs' claims.

**A. Jurisdiction**

Plaintiffs assert that this Court may exercise jurisdiction over this case both as a matter of federal question and in diversity. Filing No. 42 at 3. The Court shall consider both possibilities in turn.

**1. Federal question jurisdiction**

Plaintiffs allege that the following federal statutes provide the basis for this Court's exercise of federal question jurisdiction: 17 U.S.C. § 501, 17 U.S.C. § 504,[5] 17 U.S.C. § 506, 5 U.S.C. § 552a; 18 U.S.C. § 1342, 18 U.S.C. § 1841, 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), 18 U.S.C. § 47'; 39 U.S.C. § 3003; 18 U.S.C. § 2261A; and "unfair competition" and "fraud and false statements" in violation of the First and Fourteenth Amendments. Filing No. 42 at 3; Filing No. 65 at 15. Plaintiffs are partially correct.

In the context of a federal question, federal district courts have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States.

---

[5] Section 501 outlines the damages available for copyright infringement and provides for a private right to sue infringers, *see* 17 U.S.C. § 501(b), whereas Section 504 outlines the remedies available to a movant but does not supply the right to sue, *see* 17 U.S.C. § 504. As such this Court shall not discuss Section 504 further here.

*In re Otter Tail*, 116 F.3d at 1213 (citing 28 U.S.C. § 1331). While Plaintiffs cite to a multitude of federal laws, only one of them affirmatively supplies jurisdiction over some of the claims raised in the Amended Complaint.

As an initial matter, the First Amendment protects individuals only against government restrictions on speech, not against actions by private parties. *See Rendell–Baker v. Kohn*, 457 U.S. 830, 837 (1982). As Plaintiff does not allege a restriction on his speech and names only private individuals and entities as defendants, a First Amendment claim is not viable. Like the First Amendment, the Fourteenth Amendment applies only to state action and does not extend to purely private behavior as the constitutional right to privacy exists only against acts of federal or state government and does not reach private parties. *See Griswold v. Connecticut*, 381 U.S. 479 (1965). As such there are no constitutional claims raised that would support jurisdiction.

Further, 17 U.S.C. § 506, 18 U.S.C. § 47, 18 U.S.C. § 1342, 18 U.S.C. §1841, and 18 U.S.C. § 2261 are criminal statutes or outline criminal penalties. As previously noted by this Court, there is no right of a private citizen to bring criminal charges against another. *See* Filing No. 12 at 2; Filing No. 23 at 1-2. Therefore, this Court cannot assert jurisdiction over this matter pursuant to any of these statutes.

Plaintiffs list several other statues that clearly do not supply this Court with jurisdiction over this matter. Only federal agencies can be named as defendants under 5 U.S.C. § 552a. *See* 5 U.S.C. § 552a(g)(1). As none of the defendants named in the Amended Complaint are federal agencies this Court has no jurisdiction over this matter under 5 U.S.C. § 552a. 39 U.S.C. § 3003 also does not apply here as this Court is not the post office. *See* 39 U.S.C. § 3003 (allows the postal service to issue an order directing

that mail bearing a fictitious name or address to be forwarded to a dead letter office or returned to the sender).

Plaintiffs, however, also assert federal question jurisdiction via allegations of copyright and trademark infringement, which are governed by 17 U.S.C. § 501[6] and 15 U.S.C. § 1114, respectively. To raise a copyright infringement claim the following must be established: "(1) ownership of a valid copyright and (2) copying of original elements of the copyrighted work." *Warner Bros. Ent., Inc. v. X One X Prods.*, 644 F.3d 584, 595 (8th Cir. 2011) (citing *Taylor Corp. v. Four Seasons Greetings, L.L.C.*, 403 F.3d 958, 962–63 (8th Cir. 2005)). While copyright protection automatically subsists in original works of authorship fixed in any tangible medium of expression, and works of authorship expressly including pictorial, graphic, and sculptural works, *see* 17 U.S.C.A. § 102, "the Copyright Act [ ] requires copyright holders to register their works before suing for copyright infringement." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010); *see also* 17 U.S.C. § 411(a) ("no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title"). "The plaintiff in a copyright infringement claim has the burden to prove ownership of a valid copyright." *X One X Prods.*, 644 F.3d.at 591 (citing *Four Seasons Greetings*, 403 F.3d at 962).

Plaintiffs' copyright and trademark claims arise from allegations that certain defendants published photos and/or videos belonging to Welch and/or WR as well as using/publishing Welch and/or WR's name, image, and/or likeness on social media, all

[6] Plaintiffs also cite to 17 U.S.C. § 106 as providing a jurisdictional basis on which to proceed. *See* Filing No. 42 at 3. However, § 106 does not provide an individual cause of action and instead sets forth general rights granted to a copyright holder.

without their permission. Filing No. 42 at 1, 45-48, 50-59, 63-65, 67-69, 72. It is true that some works automatically obtain copyright protection upon their creation, and the failure to register (or pre-register) a work is not a jurisdictional bar. *Gattoni v. Tibi, LLC*, 254 F. Supp. 3d 659, 661-62 (S.D.N.Y. 2017). Thus, to the extent that the images and/or videos at issue in the Amended Complaint are subject to copyright protection, the Court has jurisdiction over the copyright infringement claims. However, registration or preregistration of a copyright is an element of a copyright claim, requiring dismissal when not met. *Tibi*, 254 F. Supp. 3d at 662. Therefore, while this Court may exercise federal question jurisdiction under 17 U.S.C. § 501, because Plaintiffs do not allege they registered or attempted to register any of the copyrighted works at issue in the Amended Complaint, their copyright claims cannot proceed and must be dismissed.

Plaintiffs' trademark infringement claims fair no better.

Trademark infringement claims are governed by 15 U.S.C. § 1114, which prohibits use of any reproduction, counterfeit, copy, or colorable imitation of a registered mark in commerce in the connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake by any person without consent of the registrant.[7] The first element of a trademark infringement claim requires a plaintiff to demonstrate ownership of a valid, protectable mark. *See Blumenthal Distributing, Inc. v. Comoch Inc.*, 652 F.Supp.3d 1117 (C.D. Ca., 2023). Or, for claims based on an unregistered mark, a plaintiff must independently establish that the mark is protectable—for example, by showing the mark

[7] "Traditional trademark infringement law is part of a broader law of unfair competition that has its sources in English common law and was largely codified in the Trademark Act of 1946 (Lanham Act)." *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 428 (2003) (internal citation omitted).

is suggestive, arbitrary, or fanciful, or that a descriptive mark has acquired secondary meaning. *See Vision Center Northwest, Inc. v. Vision Value, LLC*, 673 F.Supp.2d 679 (N.D. Ind., 2009) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)). As Plaintiffs do not allege they hold a registered trademark, and instead insinuate that they automatically hold one, they must independently establish the mark (or marks) at issue are protectable.

Suggestive, arbitrary, or fanciful marks "are deemed inherently distinctive and are entitled to protection.... In contrast, generic marks—those that refer to the genus of which the particular product is a species—are not registrable as trademarks." *Taco Cabana*, 505 U.S. at 768. Descriptive marks, which are those that are merely descriptive of a product, "are not inherently distinctive" but may acquire the distinctiveness, or a "secondary meaning," that would allow them to be protected under the Act. *Id.* at 768–769. Because Plaintiffs' supply no such description of the mark or marks at issue which would support a "distinctive" finding, all trademark infringement claims also cannot proceed and must be dismissed.

As the remainder of the claims raised in the Amended Complaint arise under state law, the only path to jurisdiction under federal question is via this Court's exercise of "supplemental jurisdiction," which is far from required. A federal court may exercise supplemental jurisdiction over state law claims under 28 U.S.C. § 1367 if it has federal question jurisdiction over the matter, so long as the state law claims "derive from [the same] common nucleus of operative fact" as the federal claims.[8] *United Mine Workers v.*

[8] Claims derive from a common nucleus of operative fact if they "are such that [the asserting party] would ordinarily be expected to try them all in one judicial proceeding." *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 963 (8th Cir. 2011) (quoting *Gibbs*, 383 U.S. at 725).

*Gibbs*, 383 U.S. 715, 725 (1966). However, "[a] district court[ ] may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c).

Notably, the Supreme Court has encouraged the practice of dismissing state claims when the federal claims to which they are supplemental have dropped out before trial. *See, e.g., Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims"); *Gibbs*, 383 U.S. at 726 ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

Declining to exercise supplemental jurisdiction is the appropriate course here because this matter is in its infancy and Plaintiffs have had three years to attempt to register the trademarks and copyrighted works at issue in the Amended Complaint but have not. Further, even if this Court were to exercise supplemental jurisdiction only some of the claims raised appear to potentially stem from a common nucleus of operative fact relating to the alleged copyright infringement claims, thus, many of the other claims would be subject to dismissal as outside the scope of supplemental jurisdiction under 28 U.S.C. § 1367. And finally, it appears that the majority, if not all of Plaintiffs' state law claims, are subject to pre-service dismissal as failing to state a claim on their merits, rendering leave to amend as largely if not entirely futile.

**2. Diversity jurisdiction**

Diversity jurisdiction under 28 U.S.C. § 1332 requires an amount in controversy greater than $75,000 and complete diversity of citizenship among the litigants. 28 U.S.C. § 1332(a). "Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship." *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007). Citizenship of individual parties to a complaint is governed by a party's presence in and intention to remain in a state at the time a lawsuit is filed. *Sheehan v. Gustafson*, 967 F.2d 1214, 1215 (8th Cir. 1992); *Yeldell v. Tutt*, 913 F.2d 533, 537 (8th Cir. 1990) (citing *Smith v. Snerling,* 354 U.S. 91, 93 n. 1 (1957); *Blakemore v. Missouri Pac. R.R.*, 789 F.2d 616, 618 (8th Cir.1986).

Plaintiffs, at the time they filed this suit, alleged they were citizens of Nebraska. *See* Filing No. 1 at 3. And, as to the defendants Plaintiffs alleged citizenship for in the Amended Complaint, none are citizens of Nebraska. However, Plaintiffs failed to supply any citizenship for defendants Joe Arrowsmith, Geno Picozzi, Don Caeser,[9] Darryl Lopez, Donnie Smith, Cameron Luttrell, Andrew Stathis, Matt-Who Viscione, Holden Frattin, Mike Merk, Paul Logan Kenneth, Brian Wood, Zoc Abron, Paul Rigby, Paul Songas, Dave Cook, Shane Cunningham, Billy Dineen, Jonathan Knapp, Tim Wayne, Stevie Dustin, John Lamendola, Dayne Jordan, Joey Fielder, Rob Harrington, Aaron Goble, Ryder Faulkner, and Hannah Grace Snipes. *See* Filing No. 42 at 3-4, 7-43. These deficiencies are fatal to the exercise of diversity jurisdiction by this Court as, "[d]iversity jurisdiction *cannot be established* without knowing the citizenship of every defendant."[10] *Regions*

[9] Plaintiffs spell this defendant's surname as both Caeser and Caesar. *Compare* Filing No. 42 at 13 *with* 50. However, they do not allege citizenship for a defendant using either spelling.

[10] Plaintiffs also assert that defendant Angela Joy Wilbanks is a citizen of Missouri with "alternate citizenships existing in [t]he State of Mississippi and [t]he State of California." Filing No. 65 at 16. An

*Bank v. MMIL Ent., LLC*, No. 3:18-CV-3273, 2019 WL 2375118, at *2 (C.D. Ill. June 5, 2019) (emphasis added).

The burden of adequately pleading citizenship rests on the party invoking the court's jurisdiction.[11] *Walker by Walker v. Norwest Corp.*, 108 F.3d 158, 161 (8th Cir. 1997). As such, the only options are for this Court to dismiss this suit in its entirety or allow Plaintiffs yet another opportunity to amend.[12] For the reasons that follow, the Court elects the former option.

**B. Leave to Amend Shall Not Be Granted**

Pursuant to Federal Rule of Civil Procedure 15(a)(2), leave to amend should be granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court has explained the purposes of granting leave to amend under Rule 15(a) as follows:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of such an apparent or declared reason—such as *undue delay*, bad faith or dilatory motive on the part of the movant, *repeated failure to cure deficiencies by amendments previously allowed*, undue prejudice to the opposing party by virtue of allowance of the

---

individual can only be a citizen of one state. *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006) (citing *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989)). While none of the states mentioned for the citizenship of defendant Wilbanks' would destroy complete diversity, Plaintiffs would also have to amend their citizenship allegation relating to defendant Wilbanks to proceed with their case under diversity jurisdiction if amendment were allowed.

[11] To the extent Plaintiffs still believe it is not their responsibility to establish jurisdiction, they are incorrect. *See Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004) ("The party invoking federal jurisdiction bears the burden of establishing such jurisdiction as a threshold matter."); *United States ex rel. General Rock & Sand Corp. v. Chuska Dev. Corp.*, 55 F.3d 1491, 1495 (10th Cir. 1995) ("The party seeking the exercise of jurisdiction in his favor must allege in his pleading the facts essential to show jurisdiction." (internal quotation marks omitted)). Ultimately, "the fact that it may be difficult to determine the citizenship of the parties does not absolve [Plaintiffs] of [their] responsibility to allege a sufficient basis for jurisdiction as a threshold matter." *Apodaca v. Sizzling Caesars, LLC*, No. 19-cv-03621-PAB, 2020 WL 773069, at *3 (D. Colo. Feb. 18, 2020).

[12] A court also may, in lieu of dismissing a suit brough in diversity, drop a dispensable nondiverse party at any time. *See Alfonzo-Larrain*, 490 U.S. at 832 (citing Federal Rule of Civil Procedure 21). However, in this instance it is not possible to determine whether the defendants for which citizenship is unknown are non-diverse and/or dispensable, therefore sua sponte dismissal of those defendants is not appropriate here.

> amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962) (emphasis added).

In the instant matter, justice has reached its limits.

Plaintiffs have had over three years and multiple opportunities to cure the jurisdictional (and other pleading) issues that have plagued their filings.[13] Specifically, early on in the history of this case Plaintiffs received detailed information regarding diversity jurisdiction requirements, *see, e.g.*, Filing Nos. 9 at 23-25 & 30 at 6-10, and were also afforded a multitude of opportunities to amend their complaint to address its jurisdictional and other pleading shortcomings, *see* Filing Nos. 9, 23, 30 at 10-11, 39, 41, 50 & 57. While Plaintiffs' latest attempt at amendment provides some of the jurisdictional information needed to proceed, it is still woefully deficient, and during the years of opportunity to supply the necessary information for this Court to determine whether it has jurisdiction over the dispute, Plaintiffs instead have continued to disobey Court orders and file unnecessary motions, wasting their own time as well as this Court's. *See, e.g.*, Filing No. 23 (denying multiple motions, discussing pleading requirements and warning Plaintiffs that continuing to file deficient motions shall result in filing restrictions).

Three years is long enough. Plaintiffs shall not be afforded yet another opportunity to amend their complaint to attempt to meet the jurisdictional requirements to proceed here. The Amended Complaint shall be dismissed without prejudice in its entirety for

---

[13] For example, Plaintiffs continue to name WR as a plaintiff even though Plaintiffs were warned early on in the proceedings that WR cannot proceed in this action as an unrepresented entity. *See, e.g.*, Filing No. 9 at 23; *see also* *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-02 (1993) (legal entities, as opposed to natural persons, cannot litigate in this forum without representation by licensed counsel). Counsel has never appeared for WR and Plaintiffs have never attempted to address the issue, instead simply continuing to name WR as a party. If this matter were to proceed WR would be summarily dismissed.

jurisdictional reasons as set forth in this Memorandum and Order. And, while this Court makes no findings regarding the substance of Plaintiffs' Amended Complaint, a cursory review of the claims alleged and facts in support indicate that even if Plaintiffs were given an additional opportunity to attempt to cure the Amended Complaint's jurisdictional deficiencies, doing so would be largely, if not entirely, futile.

**C. Plaintiffs' State Law Claims Appear Subject to Summary Dismissal**

Plaintiffs raise state law claims of invasion of privacy, tortious business interference, intentional infliction of emotional distress, and defamation of character, against multiple defendants, however, many of the facts asserted by Plaintiffs fall well short of meeting at least some of the elements of these claims. It is also difficult to determine what claims Plaintiffs intend to raise because they have not referenced any specific provisions of Nebraska law under which they seek to proceed.

**1. Invasion of privacy and defamation**

Nebraska recognizes invasion of privacy claims, which, under Nebraska's statutory scheme, include: exploiting a person for advertising or commercial purposes under Neb. Rev. Stat. § 20-202, trespass or intrusion upon a person's solitude under § 20-203, and placing a person before the public in a false light under § 20-204. "[A] defamation claim has four elements: (1) false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Steinhausen v. HomeServices of Neb.*, 857 N.W.2d 816 (Neb. 2015) (citation omitted).

Section 20-202 requires the publication, printing, display, or use of the name or likeness of any person at issue to be for *commercial purposes* only, typically applying to "cases in which a photograph or other likeness of a person is distributed without that person's consent *for commercial gain*." *Kimbril v. Source Media, LLC*, No. 8:22CV401, 2023 WL 6140429, at *4 (D. Neb. Mar. 31, 2023) (citing *Wilkinson*, 612 N.W.2d 213 (emphasis added)). When a name or likeness is being used without authorization to cause an association between the person's name or likeness with something else in order sell goods or services for example, a plaintiff would have a potential claim under Section 20-202. *Id.* at *5. Plaintiffs allege quite the opposite—that the comments made by multitudes of defendants were designed to harm the business of Welch and WR, not to help their own. As such it does not appear Plaintiffs intended to raise a claim under § 20-202, and if they did, there is no apparent basis for such a claim to proceed.

Invasion of privacy under § 20-203 is narrowly construed as applying only to intentional and *highly offensive interference* with a plaintiff's interest in solitude or seclusion regarding his person or his private affairs or concerns. *See Kaiser v. W. R/C Flyers, Inc.*, 477 N.W.2d 557, 562 (Neb. 1991) (emphasis added); *see also Sabrina W. v. Willman*, 540 N.W.2d 364 (Neb. Ct. App. 1995) (an owner of a tanning salon who took nude photos of an unknowing patron had invaded the patron's privacy in violation of Neb. Rev. Stat. § 20-203). Plaintiffs appear to complain that some defendants reposted and/or commented about things that Plaintiffs posted on social media. That is not an invasion of privacy.

A false light claim may proceed where one party: "(1) plac[ed] another in a false light (2) which would be highly offensive to a reasonable person and (3) that the actor had

knowledge or acted in reckless disregard as to the falsity of the publicized matter." *Wadman v. State*, 510 N.W.2d 426, 432 (Neb. App. 1993). However, if a plaintiff asserts claims of both defamation and false light invasion of privacy based on the same statement, the false light claim is subsumed within the defamation claim and is not separately actionable. *Elbert v. Young*, 977 N.W.2d 892, 903 (Neb. 2022) (citing *Steinhausen*, 857 N.W.2d 816). Therefore, to the extent Plaintiffs raise both false light and defamation claims regarding the same allegedly defamatory statements, only the defamation claim should be considered.

"A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Steinhausen*, 857 N.W.2d at 828 (citation omitted). "The threshold question in a defamation suit is whether a reasonable fact finder could conclude that the published statements imply a provably false factual assertion." *Id.* (citing *Wheeler v. Nebraska State Bar Ass'n*, 508 N.W.2d 917 (Neb. 1993)). "Statements of fact can be defamatory whereas statements of opinion—the publication of which is protected by the First Amendment—cannot." *Id.*

Here, many of the statements referenced by Plaintiffs in their Amended Complaint are statements of opinion versus statements of fact. For example, Plaintiffs allege a claim for malicious falsehoods and libel (which would be considered as false light and/or defamation claims) based on defendant Bednarik's Facebook post which referenced Plaintiff Welch when stating: "The guy is mentally challenged, just move on from him, you're picking on a guy from the short bus." Filing No. 42 at 57. Plaintiffs allege a similar claim relating to the following Facebook post made by defendant Hiatt: "This fuck most

likely has a mental disability but seems to have enough ability to earn the shit he gets." *Id.* Such "subjective impressions" cannot support a defamation claim. *Steinhausen*, 857 N.W. 2d at 828 (subjective impressions are not actionable in a defamation suit whereas objective "expressions of verifiable facts" might be). As these comments are presented as subjective opinions as opposed to assertions of fact, they (and others like them), are not actionable.

Spoken or written words are slanderous or libelous per se only if they falsely impute the commission of a crime involving moral turpitude, an infectious disease, or unfitness to perform the duties of an office or employment, or if they prejudice one in his or her profession or trade or tend to disinherit one. *Hatcher v. McShane*, 670 N.W.2d 638, 644 (Neb. App. 2003) (citing *Matheson v. Stork*, 477 N.W.2d 156 (Neb. 1991)). While Plaintiffs allegations relating to some defendants' comments about Plaintiffs' business activities have the potential to meet the standard, *see JB & Assocs., Inc. v. Nebraska Cancer Coal.*, 932 N.W.2d 71, 79 (Neb. 2019) (explaining that "[t]o determine whether a statement is defamatory and concerning a claimant, a court must consider the circumstances under which the publication of the communication was made, the character of the audience and its relationship to the subject of the publication, and the effect the publication may reasonably have had upon such audience"), Plaintiffs simply conclude their business has been harmed by social media comments made by multiple defendants but do not explain how. *See*, *e.g.*, Filing No. 65 at 5 (concluding WR suffered undescribed "harm" as a result of an online posting). Without more, such a claim is not likely to meet the pleading standard in Nebraska. *See Ashcroft*, 556 U.S. at 679 (explaining that while legal

conclusions "can provide the framework of a complaint, they must be supported by factual allegations.").

While the Court shall not address each statement made by each defendant over the course of more than 40 pages of their Amended Complaint, it appears that the majority, if not all, of the invasion of privacy and/or defamation claims are subject to summary dismissal.

**2. Tortious interference with a business relationship**

"To succeed on a claim for tortious interference with a business relationship or expectancy in Nebraska, a plaintiff must prove (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted." *Thompson v. Johnson*, 910 N.W.2d 800, 806–07 (Neb. 2018). Here, Plaintiffs point to multitudes of allegedly negative and/or harmful statements made by various defendants on social media and then conclude those statements harmed them. As noted previously, conclusory statements are not enough to support a claim. *See Ashcroft*, 556 U.S. at 679. As Plaintiffs never explain what damage was caused by many of the statements referenced or what business relationships were directly harmed by them, *see*, *e.g.*, Filing No. 65 at 16 (alleging defendant Dallas used his name or likeness without authorization resulting in "harm to my business reputation"), any claim for tortious interference with a business relationship would also likely be subject to summary dismissal.

**3. Intentional infliction of emotional distress**

To proceed with an intentional infliction of emotional distress claim in Nebraska a plaintiff must allege: (1) intentional or reckless conduct on part of a defendant; (2) the conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and instead is regarded as atrocious and utterly intolerable in a civilized community; and (3) the conduct caused emotional distress so severe that no reasonable person should be expected to endure it. *Wadman*, 510 N.W.2d at 432-33; *Brandon ex rel. Estate of Brandon v. Cty. of Richardson*, 624 N.W.2d 604 (Neb. 2001).

In addressing the second element, the Nebraska Supreme Court recently addressed the types of outrageous conduct which are actionable under intentional infliction of emotional distress as follows:

> Our prior cases illustrate the high bar that a plaintiff must reach. In one case, we found actionable extreme and outrageous conduct where the plaintiff's uncle had sexually abused her on numerous occasions when she was a child, threatening her in order to secure her silence; the uncle again reached out to her, 30 years later, by telephone and repeated the same threats; and then the uncle sent her multiple letters and offensive messages. In another case, we determined as a matter of law that a sheriff's use of crude and dehumanizing language when interviewing a victim of a sexual assault was actionable extreme and outrageous conduct. Further, we found actionable conduct when a person who had left a seriously injured passenger to die following a motor vehicle accident called the passenger's mother and falsely reported to her that her daughter had stolen his vehicle.

*Syring v. Archdiocese of Omaha*, 9 N.W.3d 445, 458 (Neb. 2024) (footnotes omitted). Conversely, outrageous conduct does not extend to “mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities that result from living in society.” *Heitzman v. Thompson*, 705 N.W.2d 426, 431 (Neb. 2005) (citing *Brandon*, 261 Neb.). “There is no occasion for the law to intervene in every case where some one's feelings

are hurt." *Davis v. Texaco, Inc.*, 313 N.W.2d 221, 223 (Neb. 1981) (internal citation and quotation marks omitted).

Here it is likely that most, if not all of the comments Plaintiffs refer to in their Amended Complaint allegations either cannot meet or fall well short of meeting an outrageous conduct standard. While the Court again declines to address each allegation, statements that Welch and/or WR need legal advice, statements implying that Welch may have a mental disability and/or is disabled, and statements that Welch is not capable of running a business, *see* Filing No. 42 at 55-60, do not rise to the required level of outrageous conduct and certainly do not support an extreme distress finding. Instead, these comments appear to be garden variety insults which are unfortunately fairly common on online forums.

IT IS THEREFORE ORDERED that:

1. The Motion for Reconsideration, Filing No. 71, is denied.

2. The Amended Complaint, Filing Nos. 42 and 65, is dismissed without prejudice.

3. The Court will enter judgment by a separate document.

4. The Clerk's Office is instructed to file this Memorandum and Order and accompanying Judgment in each of the member cases in this consolidated action.

Dated this 25th day of September, 2026.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge